NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0255n.06

Case No. 15-5975

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 10, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| GORDON MICHAEL WAGNER ) ) Plaintiff-Appellant, ) ) v. ) ) THE SHERWIN-WILLIAMS COMPANY ) ) Defendant-Appellee. ) ) _____ / ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |

Before: MERRITT, BATCHELDER, and GILMAN, Circuit Judges.

**MERRITT, Circuit Judge.** Gordon Michael Wagner appeals the district court's decision granting summary judgment to his employer, The Sherwin-Williams Company, on his claims that he was unlawfully dismissed and not accommodated in violation of the Americans with Disabilities Act and Kentucky law. Because we hold that no reasonable jury could find in Wagner's favor on the dispositive question of whether driving was an essential function of his job, we affirm the judgment of the district court.

**I. Factual and Procedural History**

Gordon Michael Wagner was the store manager of Sherwin-Williams' retail paint store in Pikeville, Kentucky from 1999 until October 2013. Wagner suffered a stroke in February 2013

and experienced a blind spot in his visual field as a result. Wagner returned to work in April, subject to the restriction from his doctors that he not drive because of his blind spot.

Because Wagner could not drive, assistant manager Allen Harvel assumed many of Wagner's driving responsibilities, and Wagner reciprocally assumed some of Harvel's on-site responsibilities. On occasion, Wagner also rode with other managers to attend mandatory meetings. Marco Cline, the Sherwin-Williams district manager for the Lexington District that encompassed the Pikeville store, told Wagner that this arrangement could continue until Wagner had further tests on his visual field.

On October 7, 2013, Wagner learned that the blind spot in his visual field was permanent. Wagner then notified Sherwin-Williams of his diagnosis, and Sherwin-Williams moved him out of the store manager position and onto long-term disability, concluding that he could not permanently serve as store manager if he could not drive.

In April 2014, Wagner filed a disability-discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"). In October 2014, before the EEOC issued a decision, Wagner requested and received a Notice of Right to Sue. Wagner then sued Sherwin-Williams in Kentucky state court, alleging wrongful discharge, failure to accommodate, and unlawful retaliation in violation of the Americans with Disabilities Act and Kentucky Civil Rights Act.

Sherwin-Williams removed the case to the United States District Court for the Eastern District of Kentucky and moved for summary judgment on all of Wagner's claims. The district court granted Sherwin-Williams' motion as to all claims. *See Wagner v. Sherwin-Williams Co.*,

Case No. 15-5975
*Wagner v. Sherwin-Williams Co.*

No. CV 14-178-ART, 2015 WL 5174130 (E.D. Ky. Sept. 2, 2015). Wagner now appeals that decision.[1]

## II. Discussion

We review the district court's grant of summary judgment *de novo*. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 246 (6th Cir. 2010). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Fed. R. Civ. P. 56(c)). We make all reasonable factual inferences in favor of the non-moving party and uphold a grant of summary judgment only where the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Id.* at 247.

The Americans with Disabilities Act prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Impermissible discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A).

---

[1] Wagner's briefing does not state explicitly which claims he intends to continue pursuing on appeal. However, his briefs are entirely concerned with whether driving is an "essential" function of his job — an issue that relates only to his wrongful-discharge and failure-to-accommodate claims — and make no mention of retaliation. Thus, we deem his retaliation claim waived. *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006) (holding that an appellant waives all issues not raised in his initial appellate brief).
    The district court held that Wagner's state-law claims are governed by federal law, *Wagner v. Sherwin-Williams Co.*, 2015 WL 5174130, at *3 n.1 (citing *Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 801–02 (Ky. 2004)), and neither party disputes this on appeal. Thus, we read Wagner's briefing as maintaining his wrongful-discharge and failure-to-accommodate claims under Kentucky law as well as federal law.

Case No. 15-5975
*Wagner v. Sherwin-Williams Co.*

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). Thus, if an individual's disability renders him unable to perform an "essential function" of his job, he is not a "qualified individual" protected by the non-discrimination provision of section 12112. *See id.* In such an instance, the Act does not require an employer to continue employing the disabled employee, nor does it require the employer to offer that employee an accommodation. *See id.* §§ 12111-12.

Upon learning that Wagner's visual disability that prevented him from driving was permanent, Sherwin-Williams removed him from his position as manager and did not offer him an accommodation to continue in that role. That action violated the Act only if Wagner is a "qualified individual" according to section 12111(8). Because the parties agree that Wagner cannot drive and do not otherwise dispute Wagner's ability to work as a manager, whether Wagner is a "qualified individual" subject to the Act's protection — and thus whether Sherwin-Williams violated the Act — depends entirely on whether driving is an "essential function" of the manager position for the purposes of section 12111(8).

To determine if a job is "essential" for the purposes of section 12112, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* § 12111(8). Federal regulations implementing and interpreting the Act offer a non-exhaustive list of non-dispositive factors to consider for "[e]vidence of whether a particular function is essential," the first two of which mirror the statutory factors:

Case No. 15-5975
*Wagner v. Sherwin-Williams Co.*

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> . . .
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3);[2] *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 762 (6th Cir. 2015) (en banc) (applying the regulatory factors to determine if a particular work function was essential).

"Whether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment," *Keith v. County of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013) (citation omitted), but summary judgment may nonetheless be proper where a court conclusively determines that there is no genuine issue as to any material fact and thus that no reasonable jury could find for the non-moving party, *see, e.g.*, *Ford Motor Co.*, 782 F.3d at 761 (affirming the district court's grant of summary judgment to the defendant on the plaintiff's claim for discrimination under the Americans with Disabilities Act, finding that "regular and predictable on-site job attendance [was] an essential function" of the plaintiff's job).

To determine whether Wagner has raised sufficient evidence to present a genuine issue of material fact — and thus avoid summary judgment — it is instructive to consider each party's evidence under the relevant statutory and regulatory factors.

---

[2] The regulations also list "[t]he terms of a collective bargaining agreement" as a factor. 29 C.F.R. § 1630.2(n)(3)(v). Because there is no collective bargaining agreement here, this factor does not apply.

Case No. 15-5975
*Wagner v. Sherwin-Williams Co.*

## A.  The Employer's Judgment

Not surprisingly, defendant Sherwin-Williams maintains that driving is an essential function of the managerial position Wagner held.  Two of its witnesses, Lexington District Manager Amy Olesh and former Lexington District Manager Marco Cline, explicitly declared that driving is an essential function of the job.  Another Sherwin-Williams witness, Manager of Human Resources/Shared Services Mary Carroll, also implied that driving was an essential task without saying so explicitly: "From a strictly financial/profitability standpoint, Sherwin-Williams is unable to meet an accommodation such as the one Mr. Wagner needs to perform the essential functions of the store manager position."

A driving store manager is essential, they say, because it allows Sherwin-Williams to form strong personal relationships with customers in the communities it serves, and thereby differentiate itself from its competitors.  Statements in Olesh's declaration are illustrative:

> To distinguish itself among the very competitive market, Sherwin-Williams adds value to its brand by focusing on commercial contractors and strives to create personal connections with this customer base. It strongly believes that having a personal connection to the customer it serves, and in the community in which its retail paint stores operate, is the most powerful and enduring connection to the consumer's long term loyalty and continued business. . . . Driving is an essential function of the Store Manager position at Sherwin-Williams. . . . The focus on serving its customers outside of the store drives Sherwin-Williams' competitive edge in the marketplace. Sherwin-Williams uses its Store Managers to distinguish itself from its competitors in the marketplace by offering more than in-store service to its customers. To this end, Store [M]anagers are required to: deliver products and respond to customer concerns directly; travel off-site for customer service; conduct face-to-face sales meetings; conduct on the job product demonstrations and job-site consultations to maintain relationships; and grow their sales.

Wagner, meanwhile, questions Sherwin-Williams' judgment that driving is essential by arguing that it "did not provide managers with company vehicles, gas allowances, or liability

insurance" and did not provide "specific training pertaining to the purported driving functions of the position." Even viewing this evidence in the light most favorable to Wagner, it indicates at most that Sherwin-Williams provides insufficient support for its managers' driving activities. But it does not discredit the clearly stated judgment of Sherwin-Williams supervisors that driving is an essential function of the manager position. And most importantly, our Court has held that an employee's opinion of whether a job function is essential cannot help him avoid summary judgment. *See Ford Motor Co.*, 782 F.3d at 764.

This evidentiary factor clearly supports the conclusion that driving is an essential function of the store manager position.

### B. Written Job Descriptions

In its written job description for store managers, Sherwin-Williams clearly states: "Employee must be able to drive a car or van." Wagner counters that this requirement is not listed under the "ESSENTIAL DUTIES" heading of the written job description. This is true; it is instead under the "PHYSICAL REQUIREMENTS" heading. Although the fact that a job requirement does not appear under an essential-duties heading in the job description may render it somewhat less powerful evidence than if it appeared under an essential-duties heading, it does not preclude it from serving as evidence of the requirement's essential nature. *See Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kans.*, 691 F.3d 1211, 1217 (10th Cir. 2012) ("The . . . job description further confirms the importance of fieldwork to [the plaintiff's] position; the fact that the location of her duties is specified in the 'Working Conditions' and 'Job Locations' sections, rather than the 'Essential Functions' section, does not render her fieldwork nonessential.").

The inclusion of a requirement in the written job description that a store manager be able to drive supports the conclusion that driving is an essential function of the position.

Case No. 15-5975
*Wagner v. Sherwin-Williams Co.*

### C. The Amount of Time Spent on the Job Performing the Function

Sherwin-Williams claims that "Wagner admits that he spent six to 12 hours (12.5% to 25%) per workweek" driving for work. This hourly figure was reported by Wagner's medical expert, based on what Wagner apparently reported to him. Wagner does not dispute the hourly or percentage figures, and the district court implicitly accepted them as true. *Wagner v. Sherwin-Williams Co.*, 2015 WL 5174130, at *4. Driving to off-site work for 6 to 12 hours of a 48-hour work week is a substantial component of a job – it amounted to roughly a day's worth of work for Wagner every week. Thus, this factor weighs in favor of finding that driving was an essential function of Wagner's job. *See Basith v. Cook Cty.*, 241 F.3d 919, 929 (7th Cir. 2001) (holding that making deliveries, which took "45 minutes to an hour of [the pharmacy technician plaintiff's] 8–hour day" was an essential job function).

### D. The Consequences of Not Requiring the Incumbent to Perform the Function

Sherwin-Williams' corporate witnesses are uniform in their conclusions that permanently allowing Wagner to serve without driving would have adverse business consequences for the Pikeville store because it would reduce flexibility, harm the store's ability to serve customers, and harm the store's ability to form and maintain relationships with customers. For instance, Mary Carroll declared:

> If the Store Manager cannot market the Sherwin-Williams product in the surrounding area; if he cannot respond to critical calls from existing customers; if he cannot travel within his servicing area and garner new customers — his store will have a very difficult time meeting its productivity levels in order to stay a viable store within the Sherwin-Williams system.

The witnesses remained unanimous about the consequences of an accommodation even after Wagner's temporary accommodation. For instance, Marco Cline testified that not requiring the Pikeville store manager to drive would result in loss of sales and loss of market share.

Case No. 15-5975
*Wagner v. Sherwin-Williams Co.*

Wagner counters only by arguing that his temporary accommodation did not result in any adverse consequences to his employer. But evidence of a temporary accommodation does not mean that a permanent accommodation would have no consequences to the employer. *See Laurin v. Providence Hosp.*, 150 F.3d 52, 60-61 (1st Cir. 1998) ("An employer does not concede that a job function is 'non-essential' simply by voluntarily assuming the limited burden associated with a temporary accommodation, nor thereby acknowledge that the burden associated with a permanent accommodation would not be unduly onerous.").

Thus, this factor weighs in favor of a finding that driving was an essential function of Wagner's job.

### E. The Work Experience of Past Incumbents in the Job

The only former Sherwin-Williams store manager other than Wagner to offer evidence was Marco Cline, who was a store manager at some point before becoming the Lexington district manager. In his deposition, he explained how the manager's ability to drive was necessary to the flexibility and mobility required to effectively run a Sherwin-Williams store:

> As far as, you know, making weekly sales calls outside the store, you know, if . . . a call was scheduled or a day out of this store was scheduled on a Tuesday, and for whatever reason we got super busy with customers giving us orders or calling in orders and we were short-handed or the — you know, we just needed the help at the store, and then it needed to be postponed, we need — you know, again, it's an unpredictable business in regards to when we — you know, when we get out of the store, when we should get out of the store. Sometimes it's — it's a couple hours here, couple hours there. So at the spur of the moment, you know, the manager needs to be mobile and be able to, you know, to accommodate changes and then service the customers, whether that's, you know, solving a complaint, solving an issue, recommending some product, changing specification of the product.

Wagner did not offer any evidence that the experience of any past incumbent indicated that driving was a non-essential function of the store manager position. Thus, this factor also weighs in favor of a finding that the driving is an essential function.

### F. The Current Work Experience of Incumbents in Similar Jobs

The only evidence offered by either party of current work experience was the deposition of Allen Harvel, the current Store Manager of the Pikeville store, and the assistant manager under Wagner. In his deposition, Harvel testified that in a 48-hour work week, his off-site work hours amounted to "as many as eight to ten sometimes." He is required to spend a day's worth of time making off-site sales calls each week, although the time may be split up over multiple workdays. Harvel stated in a declaration that he drives to get to off-site work, and that he also drives to make bank deposits.

Harvel's experience of driving to off-site work is roughly consistent with Wagner's apparent experience as reported by Wagner's expert; Harvel drove to off-site work for 8-10 hours of a 48-hour workweek, Wagner drove to off-site work for 6-12 hours of a 48-hour workweek. Thus, like the "amount of time spent on the job performing the function," this factor weighs in favor of finding that driving was an essential function of Wagner's job. *See supra* Part II.C (citing *Basith v. Cook Cty.*, 241 F.3d at 929).

\*   \*   \*

On the final count, all relevant factors weigh in favor of finding that driving was an essential function of Wagner's job as store manager. Although our law "does not . . . require blind deference to the employer's stated judgment" that driving is an essential function when ruling on a motion for summary judgment, the law "*does* require granting summary judgment where an employer's judgment as to essential job functions — evidenced by the employer's

Case No. 15-5975
*Wagner v. Sherwin-Williams Co.*

words, policies, and practices and taking into account all relevant factors — is 'job-related, uniformly-enforced, and consistent with business necessity.'" *Ford Motor Co.*, 782 F.3d at 765-66 (quoting *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)) (emphasis in original). Here, all the factors weigh in favor of finding that driving is an essential function of the store manager position, and Wagner has not offered any evidence indicating that Sherwin-Williams' judgment that driving is essential is inconsistent with business necessity — other than partisan opinion, which is not cognizable evidence for this purpose. *See id.* at 782 F.3d at 764.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.